**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES WORS, Individually and for Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>R & S TOWER SERVICES, INC.,<br><br>　　　　Defendant. | Civil No. _____<br><br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.　　James Wors (Wors) brings this class and collective action to recover unpaid wages and other damages from R & S Tower Services, Inc. (R&S) for violations of the Fair Labor Standards Act (FLSA), Illinois Minimum Wage Law (IMWL), the Illinois Wage Payment and Collection Act (IWPCA), and Kentucky Wage and Hour Act (KWHA).

2.　　R&S employed Wors as one of its Hourly Employees (defined below) in numerous states, including Illinois and Kentucky.

3.　　R&S pays Wors and the other Hourly Employees by the hour.

4.　　Wors and the other Hourly Employees regularly work more than 40 hours a week.

5.　　But R&S does not pay Wors and its other Hourly Employees for all their hours worked, including overtime hours.

6.　　Instead, R&S requires Wors and the other Hourly Employees to mark that they took a "meal break" each workday, regardless of whether they actually received a *bona fide* meal break (R&S's "meal deduction policy").

7.      Thus, R&S does not pay Wors and the other Hourly Employees for that time.

8.      But Wors and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9.      Instead, R&S requires Wors and its other Hourly Employees to remain on duty and perform compensable work throughout their shifts and subjects them to work interruptions during attempted "meal breaks."

10.     Additionally, R&S pays Wors and the other Hourly Employees for "Drive Time", but fails to include these hours in determining when Wors and the other Hourly Employees work in excess of 40 hours in a week (R&S's "drivetime policy")

11.     R&S's meal deduction policy and drive time policy violate the FLSA, IMWL, and KWHA by depriving Wors and the other Hourly Employees of overtime wages for all overtime hours worked.

12.     Likewise, R&S's meal deduction policy violates the IWPCA by depriving Wors and the other Hourly Employees of all their earned wages (at their agreed hourly rates) for all hours worked.

## JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.     This Court has general personal jurisdiction over because R&S maintains its principal place of business in Missouri.

16.     Venue is proper because R&S maintains its principal place of business Saint Louis, Missouri, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

17.     Wors worked for R&S as a Technician 2 and Lead Technician from approximately September 2016 until June 2024, including in Kentucky during 2023 and Illinois during 2023 and 2024.

18.     Throughout his employment, R&S classified Wors as non-exempt and paid him by the hour.

19.     Throughout his employment, R&S subjected Wors to its common practice of automatically recording a 30-minute "meal break" each workday.

20.     But throughout his employment, Wors did not actually receive or have the opportunity to take *bona fide* meal breaks.

21.     Likewise, R&S subject Wors to its drive time policy throughout his employment.

22.     Wors brings this class action on behalf of himself and other similarly situated hourly, non-exempt R&S employees who were subject to R&S's meal deduction policy and/or drive time policy.

23.     The putative collective of similarly situated employees under the FLSA is defined as:

> **All hourly R&S employees at any time during the last 3 years until final resolution of this action (the "FLSA Collective Members").**

24.     The putative class of similarly situated employees under the IMWL is defined as:

> **All hourly R&S employees in Illinois at any time during the last 3 years until final resolution of this action (the "IMWL Class Members").**

25.     The putative class of similarly situated employees under the IWPCA is defined as:

> **All hourly R&S employees in Illinois who were eligible to take a 30-minute meal break at any time during the last 10 years until final resolution of this action (the "IWPCA Class Members").**

26.     The putative class of similarly situated employees under the IMWL is defined as:

> **All hourly R&S employees in Kentucky at any time during the last 3 years until final resolution of this action (the "Kentucky**

Class Members").

27. The FLSA Collective Members, IMWL Class Members, the IWPCA Class Members, and Kentucky Class Members are collectively referred to as the "Hourly Employees."

28. R&S is a Missouri corporation headquartered in Saint Louis, Missouri.

29. R&S may be served through its registered agent: **Matthew Guntli, 4630 W. Florissant Ave., Saint Louis, Missouri 63115**, or wherever he may be found.

**FLSA COVERAGE**

30. At all relevant times, R&S was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31. At all relevant times, R&S was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, R&S was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because R&S had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce.

33. At all relevant times, R&S has had an annual gross volume of sales made or business done of not less than $1,000,000.

34. At all relevant times, Wors and the other Hourly Employees were R&S's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35. At all relevant times, Wors and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

36.     R&S is a contractor that "builds and maintains cellular infrastructure with skilled field technicians and tradespeople."[1]

37.     To meet its business objectives, R&S employs workers, like Wors and the other Hourly Employees, to construct and provide ongoing service and maintenance for telecommunication towers.

38.     R&S classifies them as non-exempt and pays them by the hour.

39.     While exact job titles and precise job duties may differ, Wors and the other Hourly Employees are all subject to R&S's same or similar meal deduction policy for similar work.

40.     For example, Wors worked for R&S as a civil technician 2 from approximately April 2020 until October 2024, including in Kentucky during 2023 and Illinois during 2024.

41.     As a civil technician 2, Wors's job duties included building and setting the concrete pad to form the base for new towers, building pads for new generators, and installing precast concrete pavement.

42.     Throughout his employment, R&S classified Wors as non-exempt and paid him by the hour.

43.     Indeed, R&S agreed to pay Wors approximately $21 an hour and $33.19 an hour for work on certain projects requiring R&S to pay the prevailing wage.

44.     Throughout his employment, R&S required Wors to report his "on the clock" hours worked through its designated timekeeping system.

45.     R&S's records reflect the hours Wors worked "on the clock" each workweek.

46.     Indeed, Wors typically worked approximately 8 to 12 hours a week for 5 to 6 days a week (40 to 72 hours a workweek).

47.     But R&S did not pay Wors for all his hours worked.

---

[1] https://rnstower.com/ (last visited April 23, 2025).

48.     Instead, throughout his employment, R&S subjected Wors to its meal deduction policy.

49.     Specifically, R&S automatically deducted 30-minutes each workday for a "meal break," regardless of whether he actually received a *bona fide* meal break.

50.     Thus, R&S did not pay Wors for that time.

51.     But throughout his employment, Wors did not actually receive *bona fide* meal breaks.

52.     Instead, Wors was forced to routinely spend his unpaid "meal breaks" performing his regular job duties, constructing telecommunication tower components for R&S's—not his own—predominant benefit.

53.     As a result of its meal deduction policy R&S failed to pay Wors for all hours worked, including overtime hours, at the required rate, in violation of the FLSA, IMWL, IWPCA and KWHA.

54.     Further, R&S never provided or made available any rest breaks to Wors.

55.     As a result of its meal deduction policy R&S also failed to pay Wors earned wages (at his agreed hourly rate) for all hours he worked, in violation of the IWPCA.

56.     Additionally, throughout his employment, R&S paid Wors under its drive time policy.

57.     Specifically, R&S paid Wors for "Drive Time" hours as a separate line item on his paystubs but failed to include these "Drive Time" hours in determining when he had reached 40 hours worked in a workweek.

58.     Thus, R&S required Wors to work more than 40 hours in a workweek before he receiving time and a half overtime wages, which the FLSA, IMWL, IWPCA and KWHA require for all hours worked in excess of 40 a workweek.

59.     For example, during the pay period ending September 22, 2024, Wors worked 56.75 hours (56 hours and 45 minutes), but R&S only paid him time and a half overtime wages for 9.75 (9 hours and 45 minutes) of his 16.75 overtime hours worked:

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Drive Time | 7:00 | 21.00 | 147.00 | 2,100.00 |
| Prev Wage - Labor | 40:00 | 33.19 | 1,327.60 | 3,551.49 |
| Prev Wage - Labor - Overtime | 0:45 | 51.97 | 38.98 | 622.42 |
| Overtime - Labor City | 9:00 | 31.50 | 283.50 | 764.63 |
| Hourly - Labor | | | | 22,154.25 |
| Overtime - Labor | | | | 3,849.40 |
| Holiday | | | | 824.00 |
| Vacation | | | | 1,488.00 |
| Hourly - Labor City | | | | 330.00 |
| Prev Wage - Operator - Overti... | | | | 728.28 |
| Prev Wage - Ironworker | | | | 1,103.44 |
| Prev Wage - Ironwork - Overti... | | | | 68.31 |
| Prev Wage - Cement - Overti... | | | | 444.78 |
| | 56:45 | | 1,797.08 | 38,029.00 |

60.    Thus, R&S failed to pay him at least 1.5 times his regular rate of pay for 7 overtime hours worked during this workweek.

61.    Wors and the other Hourly Employees perform their jobs under R&S's supervision and use tools, equipment, PPE, and technology R&S approves and supplies.

62.    R&S requires Wors and the other Hourly Employees to follow and abide by common work, time, pay, meal break, rest break, and overtime policies and procedures.

63.    At the end of each pay period, Wors and the other Hourly Employees receive wages from R&S that are determined by common systems and methods that R&S selects and controls.

64.    R&S requires Wors and its other Hourly Employees to record their "on the clock" hours worked using R&S's timekeeping system.

65.    Thus, just as R&S's records reflect the number of hours Wors worked "on the clock" each workweek, R&S also has records of the number of hours the other Hourly Employees work "on the clock" each workweek.

66.    But, like Wors, R&S fails to pay its other Hourly Employees for all their hours worked.

67.     Indeed, R&S uniformly subjects its other Hourly Employees to the same meal deduction policy it imposed on Wors.

68.     Specifically, just as with Wors, R&S automatically deducts a 30-minute so called "meal break" from their hours each workday, whether or not they actually receive or take a *bona fide* meal break.

69.     R&S simply assumes Wors and its other Hourly Employees receive a *bona fide* 30-minute meal break each shift they work.

70.     But, like Wors, the other Hourly Employees do not actually receive *bona fide* meal breaks.

71.     Instead, like Wors, R&S requires its other Hourly Employees to remain on duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

72.     And, like Wors, R&S subjects its other Hourly Employees to work interruptions during their unpaid "meal breaks."

73.     Because of these work duties and interruptions, Wors and the other Hourly Employees are not free to engage in personal activities during their unpaid "meal breaks."

74.     In other words, Wors and the other Hourly Employees are not relieved of their normal job duties during their unpaid "meal breaks."

75.     Rather, during their unpaid "meal breaks," Wors and the other Hourly Employees are forced to remain on duty and perform their regular duties and responsibilities.

76.     Thus, Wors and the other Hourly Employees routinely spend their unpaid "meal breaks" performing work for R&S's—not their own—predominant benefit.

77.     This unpaid time is compensable under the FLSA, IMWL, IWPCA, and KWHA because R&S knew, or should have known: (1) Wors and its other Hourly Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with

work duties during any attempted "meal break"; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely skipped their "meal breaks" due to work demands; (5) their unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid "meal breaks" because of work interruptions; (7) they remained on R&S's premises or under R&S's supervision during their unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their telecommunication tower construction, repair, and maintenance duties for R&S's predominant benefit.

78.     R&S fails to exercise its duty as Wors's and the other Hourly Employees' employer to ensure they are not performing work that R&S does not want performed during their unpaid "meal breaks."

79.     And R&S knows, should know, or recklessly disregards whether Wors and its other Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks."

80.     Indeed, Wors and other Hourly Employees complained to their supervisors, HR, and/or R&S management about being forced to work during their unpaid "meal breaks."

81.     Thus, R&S requested, suffered, permitted, or allowed Wors and its other Hourly Employees to work during their unpaid "meal breaks."

82.     Despite accepting the benefits, R&S does not pay Wors and its other Hourly Employees for the compensable work they perform during their unpaid 30-minute "meal breaks."

83.     Thus, under R&S's meal deduction policy, Wors and the other Hourly Employees are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA, IMWL, IWPCA and KWHA.

84.     And like Wors, R&S did not provide the other Hourly Employees rest breaks.

85.     Like Wors, each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

86.     Indeed, like Wors, the other Hourly Employees typically work 8 to 12 hours a day for 5 to 6 days a week (40 to 72 hours a workweek).

87.     And, like Wors, R&S pays the other Hourly Employees under its drive time policy.

88.     That is, R&S fails to include "Drive Time" hours worked in determining how many hours they work in a workweek for overtime purposes.

89.     Thus, just as with Wors, R&S required the other Hourly Employees to work more than 40 hours a workweek before receiving time and a half overtime wages.

90.     Thus, when Wors and the other Hourly Employees worked in excess of 40 hours in a workweek, R&S paid them straight time for overtime, for at least some of the hours they worked in excess of 40.

91.     When Wors and the other Hourly Employees worked more than 40 hours in a workweek, R&S does not pay them overtime wages for all overtime hours worked because R&S (1) fails to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked, in violation of the FLSA, IMWL, and KWHA.

92.     Likewise, R&S failed to pay Wors and the other Hourly Employees at their agreed for all hours worked, including overtime hours, at their agreed rates, in violation of the IWPCA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

93.     Wors brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

94.     Like Wors, the other Hourly Employees are victimized by R&S's meal deduction policy and drive time policy.

95.     Other Hourly Employees worked with Wors and indicated they were paid in the same manner, performed similar work, and were subject to R&S's same meal deduction policy and drive time policy.

96.    Based on his experience, Wors is aware R&S's meal deduction policy and drive time policy were imposed on other Hourly Employees.

97.    The putative classes of Hourly Employees are so numerous that joinder of each putative class member in a single lawsuit would be impracticable.

98.    The Hourly Employees are similarly situated in the most relevant respects.

99.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime wages for all hours worked over 40 in a workweek.

100.    The only relevant inquiry is whether the Hourly Employees were subject R&S's meal deduction policy and/or drive time policy.

101.    Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

102.    Rather, R&S's meal deduction policy and drive time policy render Wors and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages and overtime pay.

103.    R&S's records reflect the number of hours the Hourly Employees recorded worked each week.

104.    R&S's records further reflect it deducted 30 minutes a day from the Hourly Employees' recorded work time for so-called "meal breaks."

105.    And R&S records show that it had a custom and practice of paying for some "Drive Time" hours, but it failed to include these "Drive Time" hours worked when determining if the Hourly Employees had worked in excess of 40 hours a workweek.

106.    The back wages owed to Wors and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

107.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to R&S's records, and there is no detraction from the common nucleus of liability facts.

108.    Therefore, the issue of damages does not preclude class or collective treatment.

109.    Wors's experiences are therefore typical of the experiences of the other Hourly Employees.

110.    Wors has no interest contrary to, or in conflict with, the Hourly Employees that would prevent class or collective treatment.

111.    Like each Hourly Employee, Wors has an interest in obtaining the unpaid wages owed under federal, Illinois, and Kentucky law.

112.    Wors and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

113.    Wors retained counsel with significant experience in litigating complex class and collective actions.

114.    A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

115.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and R&S will reap the unjust benefits of violating the FLSA, IMWL, IWPCA, and KWHA.

116.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

117.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and R&S.

118.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

119.    Accordingly, a class and collective action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Hourly Employees are entitled.

120.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

121.    Among the common questions of law and fact are:

(a)    Whether R&S engaged in a policy and practice of requiring deduction of 30 minutes a workday from the Hourly Employees' recorded work time for so-called "meal breaks";

(b)    Whether R&S knew, or had reason to know, it requested, suffered, permitted, or allowed the Hourly Employees to work during their unpaid "meal breaks";

(c)    Whether R&S's drive time policy required the Hourly Employees to work in excess of 40 hours a workweek without overtime premium wages at the required rate;

(d)    Whether R&S failed to pay the Hourly Employees overtime wages for all overtime hours worked in violation of the FLSA, IMWL, and KWHA;

(e)    Whether R&S failed to pay the Hourly Employees all their earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA;

(f)    Whether R&S's decision not to pay the Hourly Employees overtime

wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

(g)     Whether R&S's violations were willful?

122.    There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

123.    The Hourly Employees are known to R&S, are readily identifiable, and can be located through R&S's business and personnel records.

### R&S'S FLSA VIOLATIONS WERE WILLFUL

124.    R&S knew it was subject to the FLSA's and KWHA's overtime provisions.

125.    R&S knew the FLSA and KWHA required it to pay non-exempt employees, including Wors and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

126.    R&S knew Wors and the other Hourly Employees were non-exempt employees entitled to overtime pay.

127.    R&S knew it paid Wors and the other Hourly Employees by the hour.

128.    R&S knew Wors and the other Hourly Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because R&S required them to record their "on the clock" hours worked using its timeclock system.

129.    R&S knew the FLSA and KWHA required it to pay employees, including Wors and the other Hourly Employees, for all hours they performed compensable work.

130.    R&S knew that as Wors's and the other Hourly Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that R&S did not want performed.

131. R&S knew it failed to provide Wors and the other Hourly Employees with *bona fide*, uninterrupted meal breaks.

132. R&S knew Wors and the other Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

133. R&S knew Wors and the other Hourly Employees regularly worked during their unpaid "meal breaks."

134. R&S knew Wors and the other Hourly Employees regularly spent their unpaid "meal breaks" performing their regular job duties for R&S's predominant benefit.

135. And R&S knew it did not provide Wors and the other Hourly Employees with *bona fide* rest breaks.

136. Indeed, Wors and the other Hourly Employees complained to R&S's management, HR, and/or their supervisors about being forced to work during their rest breaks and unpaid "meal breaks."

137. Thus, R&S knew it requested, suffered, permitted, or allowed Wors and the other Hourly Employees to work during their unpaid "meal breaks."

138. In other words, R&S knew, should have known, or recklessly disregarded whether Wors and the other Hourly Employees performed compensable work during their unpaid "meal breaks."

139. Nonetheless, R&S required Wors and the other Hourly Employees to mark they took a 30-minute "meal break" each workday.

140. In other words, R&S knew, should have known, or recklessly disregarded whether it did not pay Wors and the other Hourly Employees for all the hours they performed compensable work.

141.    And R&S knew it required Wors and the other Hourly Employees to work "Drive Time" that it did not include in their total hours worked for overtime purposes.

142.    R&S's decision to require Wors and the other Hourly Employees to record a 30-minute unpaid "meal break" each workday, regardless of whether they actually received it, was neither reasonable, nor was it made in good faith.

143.    R&S decision not to include "Drive Time" in determining the number of overtime hours worked was neither reasonable, nor was it made in good faith.

144.    R&S's failure to pay Wors and the other Hourly Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

145.    R&S knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Wors and the other Hourly Employees of overtime wages for all hours worked after 40 a workweek in willful violation of the FLSA and KWHA.

146.    R&S knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and KWHA.

<u>COUNT I</u>

FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

147.    Wors brings his FLSA claim on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

148.    R&S violated, and is violating, the FLSA by employing non-exempt employees (Wors and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks and/or drive time.

149.     R&S's unlawful conduct harmed Wors and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

150.     Accordingly, R&S owes Wors and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

151.     Because R&S knew, or showed reckless disregard for whether its policies violated the FLSA, R&S owes these wages for at least the past 3 years.

152.     R&S is also liable to Wors and the other Hourly Employees for an additional amount equal to all unpaid wages as liquidated damages.

153.     Finally, Wors and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### (IMWL CLASS)

154.     Wors brings his IMWL claims as a class action on behalf of himself and the other IMWL Class Members.

155.     R&S's conduct violates the IMWL (820 ILCS 105/1, *et seq.*).

156.     At all relevant times, R&S was subject to the IMWL because R&S was (and is) an "employer" within the meaning of the IMWL. 820 ILCS 105/3(c)

157.     At all relevant times, R&S employed Wors and the other IMWL Class Members as its covered "employees" within the meaning of the IMWL. 820 ILCS 105/3(d).

158.     The IMWL requires employers, like R&S, to pay non-exempt employees, including Wors and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 820 ILCS 105/4a.

159.     Wors and the other IMWL Class Members are entitled to overtime wages under the IMWL.

160.     R&S violated, and is violating, the IMWL by failing to pay Wors and the other IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid "meal breaks." *See* 820 ILCS 105/4a.

161.     R&S's unlawful conduct harmed Wors and the other IMWL Class Members by depriving them of the overtime wages they are owed.

162.     Accordingly, Wors and the IMWL Class Members are entitled to recover the difference between the overtime wages actually paid and the proper overtime wages actually earned, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## <u>COUNT III</u>

### FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA
### (IWPCA CLASS)

163.     Wors brings his IWPCA claim on behalf of himself and the other IWPCA Class Members.

164.     R&S's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

165.     At all relevant times, R&S was subject to the IWPCA because R&S was (and is) an "employer" within the meaning of the IWPCA.

166.     At all relevant times, R&S employed Wors and the other IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

167.     The IWPCA requires employers, like R&S, to pay employees, including Wors and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

168.     During the course of their employment, R&S agreed to pay Wors and each IWPCA Class Member an hourly rate for all the hours of work they performed.

169.     Wors and each IWPCA Class Member accepted R&S's offer.

170.    But during the course of their employment, R&S failed to pay Wors and the other IWPCA Class Members for all the time they worked at the hourly rates R&S agreed to pay them because R&S failed to include time they worked during their "meal breaks" in their total number of hour worked in a given workweek.

171.    R&S violated, and is violating, the IWPCA by failing to pay Wors and the other IWPCA Class Members all their earned wages (at the hourly rates R&S agreed to pay them) for all the hours of work they performed for R&S's benefit.

172.    R&S's unlawful conduct harmed Wors and the other IWPCA Class Members by depriving them of the earned wages they are owed.

173.    Accordingly, Wors and the other IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

<u>**COUNT IV**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE KWHA**
**(KENTUCKY CLASS)**

174.    Wors brings his KWHA claim on behalf of himself and the other Kentucky Class Members pursuant to Fed. R. Civ. P. 23.

175.    R&S's conduct violates the KWHA. K.R.S. § 337.010, *et seq*.

176.    At all relevant times, R&S was subject to the KWHA because R&S was (and is) an "employer" within the meaning of the KWHA. K.R.S. § 337.010(1)(d).

177.    At all relevant times, R&S employed Wors and the other Kentucky Class Members as its covered "employees" within the meaning of the KWHA. K.R.S. § 337.010(1)(e).

178.    The KWHA requires employers, like R&S, to pay non-exempt employees, like Wors and the other Kentucky Class Members, overtime wages at rates not less than 1.5 times their regular

rates of pay—based on all remuneration—for all hours worked over 40 in a workweek. K.R.S. § 337.385.

179.    Wors and the other Kentucky Class Members are entitled to overtime wages under the KWHA.

180.    And the KWHA requires employers, like R&S, to provide employees, like Wors and the other Kentucky Class Members, with meal and rest periods. K.R.S. §§ 337.355 and 337.365.

181.    But R&S did not provide or make meal or rest periods available to Wors and the other Kentucky Class Members.

182.    R&S violated, and is violating, the KWHA by employing non-exempt employees, Wors and the other Kentucky Class Members, for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek, including hours worked "off the clock" and during drive time. *See* K.R.S. § 337.385.

183.    R&S's unlawful conduct harmed Wors and the other Kentucky Class Members by depriving them of the overtime wages they are owed.

184.    Accordingly, R&S owes Wors and the other Kentucky Class Members the difference between the overtime wages actually paid and the required overtime wages actually earned for at least the last three years. *See* K.R.S. § 337.385(1).

185.    In violating the KWHA, R&S acted without a good faith basis and without reasonable grounds for believing its acts and omissions were not violative of clearly applicable Kentucky law.

186.    Thus, R&S is also liable to Wors and the other Kentucky Class Members for an additional amount equal to all unpaid wages as liquidated damages. *See* K.R.S. § 337.385(1).

187.    Finally, Wors and the other Kentucky Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* K.R.S. § 337.385(1).

**JURY DEMAND**

188.    Wors demands a trial by jury on all Counts.

**RELIEF SOUGHT**

WHEREFORE, Wors, individually and on behalf of the other Hourly Employees, seeks the following relief:

(a)    An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

(b)    An Order allowing this action to proceed as a class action under the IMWL, IWPCA, and KWHA and certifying the putative classes of Hourly Employees;

(c)    An Order appointing Wors and his counsel to represent the interests of the Hourly Employees;

(d)    An Order finding R&S liable to Wors and the other Hourly Employees for unpaid overtime wages, plus liquidated damages in amount equal to their unpaid wages under the FLSA;

(e)    An Order finding R&S liable to Wors and the other IMWL Class Members for unpaid overtime wages owed under the IMWL, plus treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

(f)    An Order finding R&S liable to Wors and the IWPCA Class Members for unpaid earned wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

(g)     An Order finding R&S liable to Wors and the other Kentucky Class Members for all unpaid wages owed under the KWHA, plus liquidated damages in an amount equal to their unpaid wages;

(h)     An Order awarding attorneys' fees, costs, and expenses;

(i)     A Judgment against R&S awarding Wors and the other Hourly Employees all their unpaid wages, liquidated damages, treble damages, monthly statutory damages, attorneys' fees, costs, expenses, and any other penalties available under the FLSA, IMWL, IWPCA, and KWHA;

(j)     An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(k)     All such other and further relief to which Wors and the other Hourly Employees may show themselves to be justly entitled.

Dated: May 21, 2025.                    Respectfully submitted,

                                        **ENGELMEYER & PEZZANI, LLC**

                                        By: */s/ Anthony M. Pezzani*
                                        Anthony M. Pezzani,  MO Bar #52900
                                        13321 N. Outer Forty Road, Suite 300
                                        Chesterfield, Missouri  63017
                                        (636) 532-9933 Phone
                                        (314) 448-4320 Facsimile
                                        tony@epfirm.com


                                        William C. (Clif) Alexander*
                                        Austin W. Anderson*
                                        **ANDERSON ALEXANDER PLLC**
                                        101 N. Shoreline Blvd., Suite 610
                                        Corpus Christi, Texas 78401
                                        Telephone: (361) 452-1279
                                        clif@a2xlaw.com
                                        austin@a2xlaw.com

                                        Michael A. Josephson*
                                        Andrew W. Dunlap*
                                        **JOSEPHSON DUNLAP LLP**
                                        11 Greenway Plaza, Suite 3050
                                        Houston, Texas 77046
                                        713-352-1100 – Telephone
                                        713-352-3300 – Facsimile
                                        mjosephson@mybackwages.com
                                        adunlap@mybackwages.com

                                        Richard J. (Rex) Burch
                                        **BRUCKNER BURCH PLLC**
                                        11 Greenway Plaza, Suite 3025
                                        Houston, Texas 77046
                                        713-877-8788 – Telephone
                                        rburch@brucknerburch.com

                                        *Pro hac vice applications forthcoming*

                                        **ATTORNEYS FOR WORS &
                                        THE HOURLY EMPLOYEES**